PARISH OF ST. CHARLES THROUGH THE
DEPT. OF PLANNING & ZONING

VERSUS

WANDA F. BORDELON WIFE OF/AND
DOUGLAS E. BORDELON

NO. 24-CA-85

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-NINTH JUDICIAL DISTRICT COURT
PARISH OF ST. CHARLES, STATE OF LOUISIANA
NO. 92,064, DIVISION "D"
HONORABLE M. LAUREN LEMMON, JUDGE PRESIDING

October 30, 2024

**JOHN J. MOLAISON, JR.**
**JUDGE**

Panel composed of Judges Jude G. Gravois,
John J. Molaison, Jr., and Scott U. Schlegel

<u>**AFFIRMED**</u>
**JJM**
**JGG**
**SUS**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Morgan Naquin
Deputy, Clerk of Court

DEFENDANT/APPELLANT,
WANDA F. BORDELON WIFE OF/AND DOUGLAS E. BORDELON
    In Proper Person

COUNSEL FOR PLAINTIFF/APPELLEE,
ST. CHARLES PARISH
    Corey M. Oubre
    Robert L. Raymond

**MOLAISON, J.**

The defendants/appellants, Wanda and Douglas Bordelon,[1] have appealed the October 30, 2023, judgment that found them to violate three parish ordinances. For the following reasons, we affirm the trial court's judgment.

## FACTS

The appellants own property in St. Charles Parish, bearing the address of 180 Thoroughbred Avenue, Montz, Louisiana. On April 19, 2023, St. Charles Parish ("the Parish") filed a petition alleging that the appellants violated the St. Charles Parish Code of Ordinances ("the Code") on nuisances as follows:

1) Chapter 16, Article II, Section 16-11: abandoned, junked, wrecked or derelict vehicles;

2) Article IV, Section 16-48(a)(4): trash and debris on property; and

3) Appendix A, Section XI, A4a Zoning regulations: open storage of building materials, lumber, machinery, etc.

The appellants filed an answer and a reconventional demand. The appellants denied the allegations and claimed they were due damages from the Parish. The Parish denied the allegations in the reconventional demand.

On August 31, 2023, the appellants filed a motion to dismiss the petition, claiming that this matter was the subject of a prior lawsuit that found the Parish's action against them prescribed. The appellants also argued for dismissal of the Parish's action based on the doctrine of *res judicata*. The trial court heard the appellants' motion to dismiss while holding the trial on the allegations raised in the petition. After the presentation of evidence and arguments, the trial court denied the motion to dismiss and granted judgment in favor of the Parish, ordering the appellants to "remove all abandoned, junked, wrecked, or derelict vehicles, remove

---

[1] The appellants appeared *pro se* in the trial court and in this court.

all trash and debris, and cease open storage of building material, machinery, lumber, and pipe from the subject property."

At trial, Paul Ward, a Code Enforcement Officer for the Parish, testified that he inspected the appellants' property on August 25, 2022, and issued an inspection report dated August 31, 2023. This report details his findings of ten property inspections from August 25, 2022 to August 31, 2023. Mr. Ward inspected the property again on September 27, 2023. Mr. Ward took pictures of the property at each inspection. The report and attached photographs are in evidence as P-1. Several other photos are in evidence as P-2, entitled "Photographs from prior litigation." Mr. Ward testified that there is trash, debris, and derelict vehicles on the property, as well as old and new equipment and open storage of building materials, including pipes and metal. Mr. Ward testified that based on his most recent inspection, these violations still exist on the property. He testified that the violations continued to get worse over time.

Appellants questioned Mr. Ward regarding violations on the property that were subject to prior litigation. Mr. Ward testified that comparing photographs from the prior violations with those taken at inspections for the current violations indicates that there are additional amounts of trash and debris, machinery and equipment, and building material on the property. Specifically, Mr. Ward compared the prior litigation photographs to those of August 2022. He observed items at the August 2022 inspection that were not present in the photographs from the preceding litigation; these items include tires, various types of construction wood, unidentifiable items covered with a tarp, a bed frame, various automotive parts, various containers, wood pallets, flooring, unidentified machinery, train car, coils of air condition unit, generator, electrical pipes, multiple containers, a red Dodge, a blue Ford dually, doors and frames, various types of metal, angle iron, beams, and pipes. Also, located in overgrown grass and weeds, are various lawn

equipment, metal shelving, an ATV, air compressor tank, lawnmower decking, windows, a diesel engine, engine blocks, metal framing, PVC piping, metal boxes, pieces of welding machinery, and unidentified machinery "rusted and in pieces." He elaborated that there were other items that he could not identify due to the tall grass and weeds, such as various containers, metal cables, electric panels, a hand truck, and construction materials.

Ken Lorio, a Code Enforcement Supervisor for the Parish, testified that he also inspected the appellants' property and compared recent photographs with exhibit P-3, which are older photographs of the property from 2008, 2011, and 2018. Mr. Lorio testified that the older photographs show no violations in the property's front yard. The January 2023 photographs showed the storage of many items in the front yard. When asked by Mr. Bordelon to identify all of the items he considered a violation, Mr. Lorio stated that there were so many items that he could not identify all of them. Mr. Lorio explained that a vehicle that does not have a license plate or a brake tag or cannot run on its own power is considered a violation. There were so many items in the yard that Mr. Lorio could not determine whether a license plate was on one of the vehicles. Mr. Lorio agreed with the findings in Mr. Ward's report.

Michael Albert, accepted as an expert in land use, planning, and code enforcement, reviewed the photographs and the inspection report. Mr. Albert explained that a nonconforming status of a property exists to protect a property owner from the use of his property that no longer complies with existing ordinances. He elaborated that the Code allows the nonconforming use to continue, but there is a prohibition against expanding the nonconforming condition. Mr. Albert testified that whatever was allowed from the prior litigation regarding alleged violations on the appellants' property "is protected." Still, additional items are not subject to the prior nonconforming provisions. He

explained that additional items are an expansion or intensification of that nonconforming status, which the Code prohibits. Comparing the photographs from the previous litigation with the January 2023 photographs, Mr. Albert opined that there was a "clear expansion and intensification of all nonconforming aspects of this property." Viewing the photographs from January 2023, Mr. Albert noted that there were derelict vehicles, trash, debris, and numerous items that would fall under violations of the Code. Specifically, he testified that the trash and debris were a violation of Article IV, Section 6018(a)(4), and the open storage of building material was a violation of Appendix A, Section 11(a)(4). Mr. Albert testified that these violations are expansions of the prior nonconforming use.

Douglas Bordelon testified that he built a house on this property in 1982. About 24 years ago, he had a dispute with his neighbor, resulting in the Parish claiming that he violated the Code. The Parish filed suit, and he prevailed. He testified that although the photographs of the property may show it unsightly, there is no proof of Code violations.

After the trial, the judge overruled the appellants' prescription and *res judicata* exceptions. The trial judge found that the photographs showed new code violations, as the Parish's witnesses testified. The court noted that the appellants offered no evidence to contradict the violations. The trial judge granted judgment in favor of the Parish as prayed for in the petition.

## LAW AND DISCUSSION

Prescription

On appeal, the appellants argue that the trial court committed manifest error in denying their motion to dismiss based on prescription. We disagree.

An exception of prescription is a type of peremptory exception. The function of the peremptory exception is to have the plaintiff's action declared

legally nonexistent or barred by the effect of law; this exception tends to dismiss or defeat the action.  Ruffins v. HAZA Foods of Louisiana, LLC, 21-619 (La. App. 5 Cir. 5/25/22), 341 So.3d 1259, 1262.  The party asserting an exception of prescription has the burden of proof; however, where the petition shows on its face that it is prescribed, the burden shifts to the opposing party to prove the prescriptive period has been interrupted or suspended.  McClellan v. Premier Nissan, L.L.C., 14-726 (La. App. 5 Cir. 2/11/15), 167 So.3d 934, 935.  The introduction of evidence determines the standard of review of a trial court's ruling on a peremptory exception of prescription.  Wells Fargo Financial Louisiana, Inc. v. Galloway, 17-0413 (La. App. 4 Cir. 11/15/17), 231 So.3d 793, 800.  Without the introduction of evidence, appellate courts review judgments sustaining an exception of prescription *de novo*.  DeFelice v. Federated Nat'l Ins. Co., 18-374 (La. App. 5 Cir. 7/9/19), 279 So.3d 422, 426.  However, with the introduction of evidence at a hearing on an exception of prescription, the trial court's findings of fact are reviewed under the manifest error standard.  Id.

In this case, the Parish introduced evidence to show the case had not prescribed.  We will address the trial court's ruling on the exception of prescription using the manifest error standard of review.

Louisiana Revised Statute 9:5625(A)(3) provides in pertinent part:

> With reference to violations of use regulations all such actions, civil or criminal ... must be brought within five years from the date the parish, municipality, and the properly authorized instrumentality or agency thereof if such agency has been designated, first had been actually notified in writing of such violation.

The appellants argue that the petition filed against them on April 19, 2023, is prescribed.  The appellants allege that the code violations that form the basis of this appeal existed before August 23, 1999.  The Parish introduced evidence contradicting this argument.

The evidence presented at trial indicates that the suit that forms the basis of this appeal was filed based on new code violations on the appellants' property observed during an inspection on August 25, 2022. The Parish filed a petition against the appellants alleging that they violated St. Charles Parish Code of Ordinances, Chapter 16, Article II, Section 16-11: Abandoned, Junked, Wrecked or Derelict Vehicles, Chapter 16, Article IV, Section 16-48(a)(4), Trash and Debris on Property, and Appendix A, Section XI, A., 4., a., Zoning Regulations. This petition was filed well within the five-year prescriptive period set forth in La. R.S. 9:5625(A)(3). Thus, we find no error in the trial court's denial of the appellants' exception of prescription.

*Res Judicata*

The appellants further argue that the trial court erred by overruling their exception of *res judicata*. We disagree.

La. R.S. 13:4231 provides:

Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
    (1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
    (2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
    (3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

The doctrine of *res judicata* bars relitigating matters previously litigated and decided. Mangiaracina v. Avis Budget Group, Inc., 16-211 (La. App. 5 Cir. 9/22/16), 202 So.3d 171, 176. Appellate courts review exceptions of *res judicata* using the *de novo* standard of review. Woodlands Dev., L.L.C. v. Regions Bank,

16-324 (La. App. 5 Cir. 12/21/16), 209 So.3d 335, 340. The party pleading the exception is burdened to prove the elements of *res judicata* by a preponderance of the evidence. Rudolph v. D.R.D. Towing Co., LLC, 10-629 (La. App. 5 Cir. 1/11/11), 59 So.3d 1274, 1277. The doctrine of res judicata is *stricti juris*, and any doubt concerning applying the principle of *res judicata* must be resolved against its application. Ataya v. Suanphairin, 23-46 (La. App. 5 Cir. 12/20/23), 378 So.3d 259, 263. In other words, the *res judicata* doctrine must be strictly construed, and any doubt concerning its applicability must be resolved against the mover. Berrigan v. Deutsch, Kerrigan & Stiles, LLP, 01-0612 (La. App. 4 Cir. 1/2/02), 806 So.2d 163, 167, writ denied, 02-338, 02-341 (La. 4/12/02), 813 So.2d 410.

The Louisiana Supreme Court has established the following elements for finding that a second action is precluded by res judicata: (1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; and (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation. Chevron U.S.A., Inc. v. State, 07-2469 (La. 9/8/08), 993 So.2d 187, 194.

In their argument regarding *res judicata*, the appellants refer to district court case number 66,699. In that case, the Parish brought suit against the appellants and "Southern Crane Services, Inc." in 2007, alleging that the appellants violated code ordinances for having trash and debris on their property and running a business in an area zoned residential. The appellants prevailed when the Louisiana Supreme Court found that the Parish had written notice of the violation in 1999 and did not file suit until 2007. Parish of St. Charles ex rel. Dept of Plan. & Zoning v. Bordelon, 10-2552 (La. 1/28/11), 52 So.3d 875.

During his testimony, Mr. Ward compared photographs from the prior litigation with those taken at inspections for the current violations. He pointed out

additional trash and debris, machinery and equipment, and building materials on the property. Specifically, comparing the photographs from the prior litigation to the photographs taken in August 2022, the additional items include tires, various types of construction wood, unidentifiable items covered with a tarp, a bed frame, various automotive parts, various containers, wood pallets, flooring, unidentified machinery, train car, coils of air condition unit, generator, electrical pipes, multiple containers, a red Dodge, a blue Ford dually, doors and frames, various types of metal, angle iron, beams, and pipes. Also, located in overgrown grass and weeds, are various lawn equipment, metal shelving, an ATV, air compressor tank, lawnmower decking, windows, a diesel engine, engine blocks, metal framing, PVC piping, metal boxes, pieces of welding machinery, and unidentified machinery "rusted and in pieces." He could not identify additional items due to the tall grass and weeds.

Mr. Lorio compared recent photographs of the appellants' property with older pictures from 2008, 2011, and 2018. Mr. Lorio testified that the older photographs show no violations in the property's front yard. However, the January 2023 photographs show so many items stored in the front yard that Mr. Lorio could not identify all items he considered a violation.

The Parish's expert, Mr. Albert, explained that the Code allows the nonconforming use of a property to continue, but there is a prohibition against expanding the nonconforming condition. He explained that whatever was allowed from the prior litigation regarding alleged violations on the appellants' property "is protected," but additional items are not subject to the prior nonconforming provisions. He expounded that the additional items are an expansion or intensification of that nonconforming status, which the Code prohibits. Comparing the older photographs with the January 2023 photographs, Mr. Albert opined that there was a "clear expansion and intensification of all nonconforming aspects of

this property." Mr. Albert testified that the photographs taken in January 2023 show that there were derelict vehicles, trash, debris, and numerous items that would fall under violations of the Code and that these violations are expansions of the prior nonconforming use.

The Parish presented evidence that proves that the petition filed against the appellants on April 19, 2023, was not the subject of the prior litigation. The Parish proved that the appellant had placed so many additional items on the property since the preceding litigation that all of them could not be identified. Further, the prior litigation involved a nonconforming use of the property, presumably "running a business in an area zoned residential." In contrast, the current litigation alleges that the appellants have violated zoning ordinances prohibiting "junk vehicles," trash and debris, and the open storage of building materials, lumber, and machinery on the property. The appellants did not carry their burden of proving that the allegations in the petition filed against them by the Parish on April 19, 2023 were the subject of the prior litigation and that the doctrine of *res judicata* applied. Thus, after a *de novo* review of the entire record, we find the trial court correctly overruled the appellants' exception of *res judicata*.

## CONCLUSION

For the preceding reasons, we affirm the trial court's October 30, 2023 judgment.

**AFFIRMED**



SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
STEPHEN J. WINDHORST
JOHN J. MOLAISON, JR.
SCOTT U. SCHLEGEL
TIMOTHY S. MARCEL

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

FIFTH CIRCUIT
101 DERBIGNY STREET (70053)
POST OFFICE BOX 489
GRETNA, LOUISIANA 70054
www.fifthcircuit.org

(504) 376-1400
(504) 376-1498 FAX

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**OCTOBER 30, 2024** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

CURTIS B. PURSELL
CLERK OF COURT

## 24-CA-85

**E-NOTIFIED**
29TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE M. LAUREN LEMMON (DISTRICT JUDGE)
COREY M. OUBRE (APPELLEE)          ROBERT L. RAYMOND (APPELLEE)

**MAILED**
WANDA F. BORDELON AND DOUGLAS E.
BORDELON  (APPELLANT)
IN PROPER PERSON
726 HELIOS STREET
METAIRIE, LA 70005